**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION**

| | |
|---|---|
| KIRAN SIDDAPURA MANJUNATHA, <br><br> Plaintiff, <br><br> v. <br><br> KRISTI NOEM, *in her official capacity as Secretary of Homeland Security;* <br><br> TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,* <br><br> Defendants. | Case No.: 25-330 |

## INTRODUCTION

1. Plaintiff Kiran Siddapura Manjunatha ("Kiran") brings this action under the Administrative Procedure Act ("APA"), to set aside the unlawful final agency action and restore Kiran to the exact legal immigration status he held as of April 1, 2025. 5 U.S.C. § 702, 704.

2. On April 1, 2025, Kiran was a full-time international student in lawful status working for Citibank on post-graduate Optional Practical Training ("OPT").

3. Kiran last entered the United States on February 25, 2025.

4. He is one of hundreds, if not thousands, of F-1 students nationwide who subsequently received an unlawful and unannounced notice of termination in his Student and Exchange Visitor Systems ("SEVIS") by U.S. Immigration and Customs Enforcement ("ICE"), a Bureau of the Department of Homeland Security.

5. SEVIS is a government database that tracks international students' compliance with their F-1 status. https://sevis.ice.gov/ (last accessed April 12, 2025).

1

6. SEVIS is a reporting system which allows schools to provide required monitoring information directly to the U.S. government on the immigration status of students. *Id.*

7. DHS, via ICE, also uses SEVIS to communicate with schools on student records by showing entry data, visa issuance, and certain change of status information. *Id.*

8. ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to thus monitor student status and communicate with academic institutions.

9. ICE terminated Kiran's SEVIS record based on an entry that listed him as "Otherwise Failing to Maintain Status."

10. The "SEVIS termination" effectively stripped Kiran of his ability to work and he was told he could no longer remain in the United States.

11. The basis for the termination was false and unsupported without specific reasons.

12. Kiran was in full compliance with the terms of his F-1 status, and he had not engaged in any conduct that could result in the termination of SEVIS or his status.

13. This Court should set aside the unlawful actions of Defendants, reinstate Kiran's status, restore his good name, and take all measures afforded by law to place Kiran in the legal status he was in on April 1, 2025. 5 U.S.C. §§ 702, 704, 705.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (federal question).

15. With limited exceptions, the APA provides district courts with the authority to set aside final agency action. 5 U.S.C. § 706.

16. The termination of a SEVIS record constitutes final agency action for purposes of APA review. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182,

185 (3d Cir. 2019).

17. Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e)(1)(C) because Kiran is a resident and domiciled in North Tonawanda, New York, and there is no real property involved in this action. Alternatively, venue is proper under 28 U.S.C. § 1391(e)(1)(B) because a substantial act or omission giving rise to the claims presented occurred at the University of Buffalo which lies within this district.

## PARTIES

18. Kiran Siddapura Manjunatha is an international student who graduated from the University of Buffalo and maintained status on STEM OPT. He is a resident of North Tonawanda, New York.

19. Defendant Kristi Noem is the Secretary of Homeland Security and has ultimate authority over DHS. In that capacity and through her agents, Defendant Noem has broad authority over the operation and enforcement of the immigration laws. Defendant Noem is sued in her official capacity.

20. Defendant Todd Lyons is the Acting Director of ICE and has authority over the operations of ICE. In that capacity and through his agents, Defendant Lyons has broad authority over the operation and enforcement of the immigration laws. Defendant Lyons is sued in his official capacity. ICE is responsible for the termination of Kiran's SEVIS record.

## LEGAL FRAMEWORK

21. Congress established a statutory basis for student visas under 8 U.S.C. § 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status.

22. The broad regulations are at 8 C.F.R. § 214.2(f) and (i) refers specifically to the admission of the student.

23. Students do not submit I-20s to SEVIS, rather SEVIS is used by schools to issue an I-20 to a student, who must present that upon entry to Customs and Border Protection.

24. Students have no direct interaction within SEVIS.

25. Once admitted in F-1 status, a student is granted permission to remain in the United States for the duration of status (D/S) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study, OPT, CPT or STEM OPT. *See* 8 CFR 214.2(f)(6) (defining a full course of study).

26. DHS monitors the academic progress and movement of foreign students and exchange visitors from entry into the United States to departure through the SEVIS). See https://studyinthestates.dhs.gov/site/about-sevis  (last accessed April 12, 2025).

27. The regulations at 8 C.F.R. § 214.2(f)(1) establish the procedure by which a foreign national may pursue his or her course of study as an F-1 nonimmigrant. This federal regulation requires that a nonimmigrant student submit a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, to SEVIS that is issued in the student's name by an approved school. 8 C.F.R. § 214.2(f)(1)(i)(A)-(B).

28. Students who enter the United States with F-1 visas are subject to an array of regulations. 8 C.F.R. § 214.2(f).

29. The regulations govern participation in an authorized "practical training" role following the completion of studies. 8 C.F.R. § 214.2(f)(10)(i).

30. There are two types of practical training programs. 8 C.F.R. § 214.2(f)(10)(ii).

31. Curricular Practical Training ("CPT") is any "alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school" that is an "integral part of an established curriculum." 8 C.F.R. § 214.2(f)(10)(i).

32. Optional Practical Training is temporary employment or unpaid internships that is "directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii).

33. A "student may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study. The student may not begin optional practical training until the date indicated on his or her employment authorization document, Form I-766." *Id*. at 214.2(f)(10)(ii)(A).

34. "A student must initiate the OPT application process by requesting a recommendation for OPT from his or her DSO. Upon making the recommendation, the DSO will provide the student a signed Form I-20 indicating that recommendation." 8 C.F.R. § 214.2(f)(11)(i).

35. "The student must properly file an Application for Employment Authorization, Form I-765 or successor form, with USCIS, accompanied by the required fee, and the supporting documents, as described in the form's instructions." 8 C.F.R. § 214.2(f)(11)(i)(A).

36. "A student must have a recommendation from his or her DSO in order to apply for OPT. When a DSO recommends a student for OPT, the school assumes the added responsibility for maintaining the SEVIS record of that student for the entire period of authorized OPT, consistent with paragraph (f)(12) of this section [8 C.F.R. § 214.2(f)]." 8 C.F.R. § 214.2(f)(11)(ii).

37. "USCIS will adjudicate a student's Form I-765 or successor form on the basis of

the DSO's recommendation and other eligibility considerations." 8 C.F.R. § 214.2(f)(11)(iii).

38. "An F-1 student who is granted employment authorization by USCIS to engage in optional practical training is required to report any change of name or address, or interruption of such employment to the DSO for the duration of the optional practical training. A DSO who recommends a student for OPT is responsible for updating the student's record to reflect these reported changes for the duration of the time that training is authorized." 8 C.F.R. § 214.2(f)(12)(i).

39. Students may receive one year of post-completion OPT, with the possibility of a 24-month extension if the student possesses a degree in the field of science, technology, engineering, or mathematics. 8 C.F.R. § 214.2(f)(10)(ii)(C).

40. "During post-completion OPT, F-1 status is dependent upon employment. Students may not accrue an aggregate of more than 90 days of unemployment during any post-completion OPT period described in 8 CFR 274a.12(c)(3)(i)(B). Students granted a 24-month OPT extension under paragraph (f)(10)(ii)(C)(2) of this section may not accrue an aggregate of more than 150 days of unemployment during a total OPT period, including any post-completion OPT period described in 8 CFR 274a.12(c)(3)(i)(B) and any subsequent 24-month extension period." 8 C.F.R. § 214.2(f)(10)(ii)(E).

41. Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa. 8 C.F.R. § 214.2(f)(5)(iv).

42. If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States. *Id*.

43. A student who "fails to maintain a full course of study without the approval of the DSO [Designated School Official] or otherwise fails to maintain status" must depart the United States immediately or seek reinstatement. *Id.*

44. The SEVIS is a centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visitors and track their compliance with terms of their status.

45. Under 8 C.F.R. § 214.3(g)(2), DSOs must report through SEVIS to SEVP when a student fails to maintain status.

46. DHS regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status." *Compare* 8 C.F.R. § 214.2(f)(5) (duration of status) and 214.1(d) (notice requirements for agency-initiated SEVIS termination).

47. The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under *See generally* 8 C.F.R. § 214.2(f)(5); 8 C.F.R. § 214.2(f)(5)(iv) (failure to maintain status).

48. In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

49. With the respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one

7

year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." *Id*.

50. DHS's ability to affirmatively terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

51. ICE may terminate SEVIS a record when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d).

52. DHS cannot unilaterally terminate nonimmigrant status unless one of these conditions apply. *Jie Fang*, 935 F.3d at 185 n.100.

53. The revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination.

https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

54. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter, and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation after a student has been admitted into the United States, because the student is permitted to continue the authorized course of study.

https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation

55. The Foreign Affairs Manual provides that a visa may be revoked for an arrest or conviction. 9 FAM 403.11-3(A) (U) (*When You May Revoke Visas*).

56. However, a revocation is not authorized where the arrest has "already been

addressed within the context of a visa application, i.e., the individual has been through the panel physician's assessment due to the arrest." 9 FAM 403.11-5(B) (U).

## FACTUAL ALLEGATIONS

57. Kiran is an international student who graduated with a master's degree in 2023 from the University of Buffalo with a degree in Financial Mathematics.

58. Kiran successfully completed Post Completion OPT which allowed him to apply for a twenty-four-month extension on STEM OPT.

59. OPT and was approved for a 24-month period of STEM OPT on February 20, 2024.

60. He has maintained status and a prestigious position working at Citibank.

61. Upon entering the United States in 2021, Kiran possessed a driver's license issued in India, but was unaware he could not use this license in the state of Indiana.

62. He rented a vehicle in Indiana from a car rental service, Hertz, which verified he could drive with his foreign license.

63. Kiran was stopped by the police and charged with a misdemeanor offense of driving without a valid license.

64. Kiran agreed to obtain a valid US license and performed 16 hours community service.

65. The criminal case was dismissed one year after Kiran fulfilled the terms of the agreement.

66. Kiran has no other criminal activity and always maintained status in the United States.

67. Kiran was most recently inspected and admitted to the United States on February

25, 2025.

68. On April 2, 2025, Plaintiff received notice that the Department of State revoked his student visa.

69. On April 4, 2025, Kiran received a notice from his DSO that ICE terminated his SEVIS record for failing to maintain status.

70. Kiran had maintained status and his offense for driving without a license was not for a crime of violence.

71. Kiran remains highly valued and supported by the University of Buffalo and Citibank.

72. However, Kiran has lost his ability to finish his STEM OPT unless returned to the status he was in prior to April 4, 2025.

73. The false, derogatory information about Kiran entered into the systems of record could render him permanently inadmissible to the United States.

74. Kiran has experienced incredible stress and was so afraid of detention and being sent to a foreign country, like El Salvador, he immediately left the United States.

75. Any false label that he is a national security or foreign policy threat will impact travel to another country.

76. The mass visa revocations and cancellation of SEVIS records has shaken campuses across the country[1] with at least one district court ordering a temporary restraining

---

[1] *See* Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students,* Associated Press, April 4, 2025, https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Kaleem, Jaweed, *Trump administration cancels dozens of international student visas at University of California, Stanford*, Los Angeles Times, April 5, 2025, https://www.latimes.com/california/story/2025-04-05/trump-administration-cancels-international-student-visas-university-of-california-stanford;

order to restore a student's status because the mass termination of SEVIS was not done in accordance with law. https://www.vnews.com/Federal-judge-reverses-student-status-revocation-for-Dartmouth-student-60542604 (last accessed April 12, 2025).

## CAUSE OF ACTION
**Administrative Procedure Act**
*(Unauthorized SEVIS Termination)*

77. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

78. Under 5 U.S.C. § 706(2), final agency action must be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

79. Defendants had no statutory or regulatory authority to terminate Kiran's SEVIS record, which constituted a final agency action. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order").

80. Kiran maintained status while a student, and while on Post Completion OPT, and thus should have been able to continue on STEM OPT for the duration of status. 8 C.F.R. § 214.2(f).

81. Defendants initiated termination of SEVIS without acting in accordance with the notice requirements of 8 C.F.R. § 214.1(d).

82. Defendants did not provide notice or any explanation to properly terminate Kiran's SEVIS record.

11

83. Although the Secretary of State had unilaterally revoked Kiran's visa, he remained in status and the regulations required Defendants to provide adequate notice prior to cancelling Kiran's SEVIS records.

84. Defendants' lack of consideration of any relevant facts specific to Kiran before making its determination was arbitrary and capricious and in violation of the APA.

85. The entry of false, derogatory information about Kiran without notice was arbitrary, capricious and not in accordance with law. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

86. Defendants' SEVIS termination did not comply with the governing regulations at 8 C.F.R. § 214.1(d).

87. Defendants' termination of Kiran's SEVIS rendered him without the ability to continue working on STEM OPT; it was not made in accordance with law, it was made in excess of statutory authority, and was accomplished without observance of procedure required by law. 5 U.S.C. § 706(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

A. Assume jurisdiction over this matter;

B. Declare that the termination of Plaintiff's SEVIS status was arbitrary, capricious, and unlawful;

C. Vacate and set aside DHS's termination of Plaintiff's SEVIS and cancellation of SEVIS records;

D. Order that Defendants return Plaintiff to the exact position he was in as of April 1, 2025;

E.  Order that Defendants update the systems of record to remove any finding that Plaintiff failed to maintain status, is a national security risk, or is inadmissible to the United States;

F.  Order that Defendants remove any and all false, inaccurate or defamatory information about Plaintiff entered into the systems of record;

G.  Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

H.  Grant such further relief as the Court deems just and proper, including the expeditious visa appointment at an Embassy or United States Consulate General.

Dated: April 15, 2025                               Respectfully Submitted,

*/s/ Aaron J. Aisen*
AARON J. AISEN
Richards & Jurusik Immigration Law
5 Niagara Square
Buffalo, NY 14202
Phone: (585) 478-7728
aaron@rjimmigrationlaw.com

*/s/Jesse M. Bless*
JESSE M. BLESS*
Bless Litigation LLC
6 Vineyard Lane
Georgetown MA 01833
Telephone: (78) 704-3897
jesse@blesslitigation.com
**Motion for Pro Hac Vice* forthcoming

Attorneys for Plaintiff

13